JOHN MURTAUGH ET AL. v. MAYOR AND ALDERMEN OF THE CITY OF PATERSON.

1. The only method provided by the charter of the city of Paterson for paving and macadamizing streets is by the imposition of a special assessment for the whole or a part of the expense of the work.

2. Repairs of streets may be done solely at the expense of the public.

3. The resolutions of the board of aldermen and the proceedings thereunder relating to the paving of parts of Bridge, Cross and Market streets, and the macadamizing of Totowa avenue, are designed to apply the sum of $40,000, to be raised by general tax under an appropriation for permanent improvement. *Held*, that the resolutions and proceedings are without authority in the city charter.

On *certiorari.*

This writ brings up certain resolutions and proceedings relating to the paving or repaving of Main street, in the city of Paterson, from the Passaic river to Market street, the paving or repaving of a part of Market street, the paving of Bridge

street from Broadway to Godwin street, the paving of Cross street from Market street to Ellison street, the macadamizing of Totowa avenue and a portion of Market street.

Argued at February Term, 1883, before Justices DEPUE, SCUDDER and REED.

For the prosecutors, *G. S. Hilton.*

For the defendants, *J. W. Griggs.*

The opinion of the court was delivered by

REED, J. The resolutions brought up by this writ fix the localities within the city of Paterson where the sum of $40,000 is to be expended for the repaving of streets. They also provide for receiving proposals for the execution of the work, and direct the awarding of contracts for some of it. The ground upon which the attack upon all this procedure is placed is that it was done by resolution and not by an ordinance of the common council.

It was stated in the brief of counsel that the city of Paterson, in making its street improvements, had adopted the policy of executing them at the public expense. The annual ordinance fixing the amount to be raised by taxation had passed the board of aldermen, and in its specification of the objects of expense included the following : "For street repairing and cleaning, $25,000 ; for permanent improvement of streets, $40,000." By the fourth section of this ordinance these sums were appropriated to these purposes.

The resolutions were intended to apply the last-named sum to such localities as, within the judgment of the board of aldermen, were proper. If we concede the power of the board of aldermen to levy this sum of money for permanent improvement as a general tax, I do not perceive that the contention of the prosecutor has much force. But there is a question of power that meets us at the first step of this inquiry. It is whether, in any way, by any form of procedure, this sum

of money can be so levied for permanent improvements. If not, then all the resolutions of the board of aldermen and the reports of committees, and the proceedings taken to apply such money by the execution of the work, are nugatory. Whatever power the board of aldermen can claim, by which they justify this levy, must be found in the charter. It is not a question of propriety as to whether the paving of streets is more properly a public burden than a private undertaking. This question has been elaborately discussed, and a collation of the cases in which it has received consideration can be found in 1 *Dill. Mun. Corp.* § 619. That the burden of such work can be imposed upon the public at large, is not to be doubted. That it can be imposed upon adjoining owners, to the amount of special benefits, is, of course, true. As to what was the plan in the present instance we must resort for information to the charter. That instrument is to be found found in the laws of 1871. *Pamph. L., p.* 808.

The first grant of power in relation to the opening and paving of streets, is discoverable in title VII., section 92 of the charter. The first subdivision of that section provides for the opening, vacating, widening, &c., of streets. The second subdivision confers the power upon the board of aldermen to order and cause any street or section of a street to be graded, curbed, guttered, graveled, macadamized, flagged or otherwise improved or regulated as the board may deem advisable, at the expense of the owners of the lands and real estate on the line of such street or section of street benefited thereby. The succeeding sections of that title provide for building sewers, changing the course of streams, and for doing any single work costing more than $500, by contract.

The charter, in the next step—section 92—provides for a bureau of street opening, who shall assess the costs upon the land to be benefited, with power, in case the costs shall exceed the benefits, of assessing a portion of such cost, not exceeding fifty per cent. thereof, upon the city at large. The next step is the organization of a bureau of street improvements. The sections 109 and 110 deal with the method to be pursued in

grading, or changing the grade of, or curbing, guttering, flagging, graveling, macadamizing, paving or otherwise improving or regulating any street. Section 111 confers power upon the board to order any repairs in the sidewalks or carriage-ways of any street, avenue, highway or road within the city. Upon inspection of sections 109 and 110, and a comparison of the text of those sections with that of section 111, it will be observable that there was in the mind of those who drafted this legislation a marked line of separation between those improvements mentioned in the first two sections including paving and macadamizing and the improvements mentioned in the last section under the term "repairs."

The power conferred upon the board in executing the first class of improvements was to be exercised by ordinance; but in making repairs, by resolution only. In carrying out the plan designed for accomplishing the former work, there must be notice of an intention to pass the ordinance. If objections by a majority of the owners of land fronting upon the street proposed to be improved were interposed, then the ordinance must receive the votes of two-thirds of all the members of the board of aldermen.

. Finally, it is enacted that the expenses of such improvement, except for the changing or altering of the grade of a street, shall be assessed on the property fronting on or adjoining the street so improved. In making reparations no notice is required, and it is provided that the expense thereof shall be paid by the corporation out of the moneys raised by tax for repairs of streets. This is all the legislation bearing upon this subject. It is, I think, apparent that the authority granted by the charter relative to this important function in the regulation of municipal affairs, (the opening and paving of its streets,) is coupled with a provision that the expense of such work shall be wholly or partly borne by the contiguous land-owner. It appears in the general grant of power first found in section 92, and in the mention of the special method of procedure in executing it as set out in sections 109 and 110. The juxtaposition of section 111 with the preceding sections,

and the entire dissimilarity of the methods to be pursued in the execution of the former work and in the making of repairs, exhibits still more strikingly the legislative intent. That intent is that all work included in the first class of improvements shall be done and paid for wholly or partly by a special assessment, while the latter description of work can be done at the expense of the public.

Were there a doubt as to the existence of the power to pave and macadamize solely at the public expense, I should hesitate long, in face of the fact that this work can be done by special assessment, before resolving the doubt in favor of the existence of such a power. The discretion which would thus be lodged in the board of aldermen to relieve the land-owners upon one part of a street from the payment of the amount of benefits which the work upon such portion confers, and to impose upon the owner of land upon an adjoining section the payment of the full amount of such benefits, would be so tremendous that the presumption would be extremely forcible that no such power was delegated to the municipal board.

In the present instance, I think there is no room for doubt as to the construction of the sections already cited. There is no express grant of power to pave at the public expense. The express mention of another method excludes the existence of such a power. The express direction as to making repairs at public expense fortifies the conclusion that no such authority exists relative to macadamizing and paving.

Upon inspecting the ordinance of the board of aldermen and the resolutions brought up by this writ, it is apparent that the improvements which these resolutions are intended to accomplish are within the class mentioned in sections 109 and 110 of the charter. The ordinance which makes the annual appropriation for municipal purposes contains, as already stated, two items: one for permanent improvement of streets, $40,000 ; the other for street repairing and cleaning, $25,000. It is the expenditure of the first amount which these resolutions are designed to accomplish.

The resolution of June 15th, 1882, authorizes the commit-

tee on streets and sewers to cause advertisements to be made for the macadamizing of Totowa avenue, eastwardly from Paterson avenue about four thousand five hundred square yards, to a depth of six inches; the work to be proceeded with so soon as the residents on the line of said avenue shall have paid into the city treasury fifty per cent. of the cost of curbing and guttering said avenue as far as the macadamization may extend. Also, for paving part of Bridge street, of Cross street and of Market street.

This committee reported that for permanent improvements, contracts should be awarded to different persons to pave the portions of the respective streets above named. The report was adopted by the board of aldermen.

It is unnecessary to set out the further proceedings of the committee. They all exhibit the character of the work proposed, namely, that it was not repairs but was work which could only be executed in the manner pointed out in sections 109 and 110. The resolutions and proceeding in pursuance thereof find no countenance in the charter, and are therefore vacated, with costs.